IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | * | |
| **UNIVERSAL MARKETING, INC.** | * | CHAPTER 11 |
| Debtor | * | BANKRUPTCY NO. 09-15404-elf |
| | * | |

**ANSWER IN OPPOSITION TO THE TRUSTEE'S MOTION FOR EXAMINATION AND PRODUCTION OF DOCUMENTS PURSUANT TO FED. R. BANKR. P. 2004**

Daminder Singh Batra, Gurmeet Batra, Jashveer Singh, Universal Delaware, Inc., Universal Enterprises, Inc., Universal Southpenn, Inc., Universal Enterprise Group, LP, Universal Enterprises Properties, Inc., and Universal Distribution, Inc. (collectively, the 2004 Respondents)[1] hereby file this Answer in Opposition to Charles R. Goldstien's, the Chapter 7 Trustee ("Trustee") Motion for (I) the Examination of the Debtor and its "Affilitates" and (II) the Production of Documents pursuant to Fed. R. Bankr. P. 2004, and in support thereof, state as follows:

**BACKGROUND**

1. On July 23, 2009, (the "Petition Date") the Debtor, Universal Marketing, Inc., filed a voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

2. On August 18, 2009, the case was converted to one under Chapter 7 of the Bankruptcy Code.

3. The 2004 Respondents do not dispute that the Court has jurisdiction over this matter or that venue is appropriate.

---

[1] The Trustee has referred to this group as the "Affiliates" using its own made up definition, however, the term "affiliate" is a legal term of art in the Bankruptcy Code, defined at 11 U.S.C. § 101(2). The Trustee has completely disregarded this statutory term and is using its own definition. Further, the Trustee has not submitted any admissible evidence of record to demonstrate that any of the 2004 Respondents are "affiliates" as defined under 11 U.S.C. § 101(2). As the term "affiliate," as defined in the Bankruptcy Code, is inapplicable to the entities that the Trustee is seeking to examine via this Rule 2004 Motion, the term "affiliate" will not be used in this response, and the entities will be referred to as "2004 Respondents."

1

4.      On September 18, 2009, CITGO Petroleum Corporation ("CITGO"), a creditor of the Debtor, filed a Motion for Authority to Examine the 2004 Respondents, seeking an examination of officers of the Debtor as well as officers of the 2004 Respondents.

5.      On November 12, 2009, the elected United States Trustee, Charles Goldstein, joined in CITGO's 2004 Motion and additionally sought document production of approximately 25 categories of documents from the 2004 Respondents (*see* Exhibit "B" to the Trustee's 2004 Motion).

6.      In the Trustee's 2004 Motion, the Trustee states that he is seeking an examination of the following:

    a. The Debtor's and Affiliates' assets and liabilities;

    b. Transactions between the Debtor and its Affiliates;

    c. Loans made and monies advanced to the Debtor and/or its Affiliates;

    d. The Debtor's and Affiliates' banking records and accounts;

    e. The banking relationship between the Debtor and/or its Affiliates with financial institutions including, but not limited to, TD Bank, N.A. Wilmington Savings Fund Society, and The Bancorp Bank;

    f. Events leading up to the filing of the Debtor's bankruptcy case; and

    g. Such other related matters as may arise.

7.      In addition, the Trustee baldly and in conclusory fashion alleges that there were "irregular financial relationships" between the Debtor and the 2004 Respondents; as well as between the Debtor, the 2004 Respondents and various banks. The Trustee, however, fails to define or identify what those "irregular relationships" were to which he refers, and in what way the relationships were "irregular."

8. Further, the Trustee has joined in the 2004 Motion filed by CITGO which seeks to question Mr. Batra about unrelated and irrelevant alleged "acts" which occurred in India well over a decade ago.

## Objection to Rule 2004 Examination

A. **A Rule 2004 Examination is Prohibited Because of Pending Adversarial Proceedings**

9. The Debtor's two largest creditors – CITGO and Gulf Oil Limited Partnership ("Gulf") – both have pending adversarial proceedings against the Debtor.

10. On or about August 31, 2009, in the 190th District, County of Harris, State of Texas, CITGO commenced litigation against Universal Enterprises, Inc., one of the 2004 Respondents (the "CITGO Texas Litigation"). A true and correct copy of the Complaint filed by CITGO is attached hereto as Exhibit "A."

11. In addition, on or about August 24, 2009 Gulf commenced litigation against a 2004 Respondent, Universal Southpenn, Inc. in the Court of Common Pleas for Philadelphia County, Pennsylvania (the "Gulf Philadelphia Litigation"). On or about October 5, 2009, the Gulf Philadelphia Litigation was reinstated by Gulf's then-counsel Archer & Greiner, P.C. A true and correct copy of the Complaint filed by Gulf is attached hereto as Exhibit "B."

12. In a Case Management Memorandum submitted by Gulf's counsel in the Gulf Philadelphia Litigation, it is also confirmed that Gulf has recently initiated suit in the Superior Court of the State of Delaware styled, *Gulf Oil Limited Partnership v. Universal Delaware, Inc., Universal Enterprises Properties, Inc., Universal Enterprise Group L.P., Universal Distribution, Inc. dba Shell King of Prussia, and U. Enterprises, Inc.*, at Docket No. 09C-08-038. A true and correct copy of the Case Management Memorandum is attached hereto as Exhibit "C."

13. On September 23, 2009, after both the CITGO Texas Litigation and the Gulf Philadelphia Litigation had been commenced, Gulf and CITGO voted to elect Charles Goldstein as the permanent trustee in the Chapter 7 proceeding.

14. Counsel to the Trustee, Charles Goldstein and the counsel who filed this 2004 Motion is Archer & Greiner, P.C. – former counsel to Gulf.

15. Not only is the Trustee's counsel former counsel for Gulf, the same individual attorneys – Steven Packman and Douglas Leney – commenced litigation against a 2004 Respondent and thus represented Gulf adversely to the 2004 Respondents, and are now representing the Trustee and are seeking the 2004 Examination.

16. It is well settled that courts "have prohibited a Rule 2004 exam of parties involved in or affected by an adversary proceeding while it is pending." 2435 Plainfield Ave., Inc. v. Township of Scotch Plains, 223 B.R. 440, 455-56 (Bankr. D.N.J. 1998), *citing* In re Valley Forge Plaza Associates, 109 B.R. 669, 674 (E.D. Pa. 1990) (collecting cases).

17. Because of Rule 2004's broad scope, courts have consistently prohibited 2004 examinations where the parties are otherwise involved in adversary proceedings in order to prevent a party from avoiding discovery procedures and using a 2004 examination to conduct broad-based discovery to later be used in the adversary proceeding. See, e.g., id.

18. Although the Trustee may not be involved in litigation against the 2004 Respondents, the two entities that hand-picked and elected the Trustee are both involved in litigation against the 2004 Respondents. Moreover, there is clearly a close relationship between the Trustee and Gulf evidenced by the fact that Gulf's former counsel is current counsel for the Trustee.

19. Moreover, Gulf did not replace Archer & Greiner as counsel until October 16, 2009, and accordingly, Archer & Greiner, and specifically Messrs. Packman Leney were

4

representing both the Trustee and Gulf, who is adverse to the 2004 Respondents, during the period of September 23, 2009 through October 16, 2009.

20. Because of Rule 2004's broad scope, courts have consistently prohibited 2004 examinations where the parties are otherwise involved in adversary proceedings in order to prevent a party from avoiding discovery procedures and using a 2004 examination to conduct broad-based discovery to later be used in the adversary proceeding. Cf. In re Valley Forge Plaza Associates, 109 B.R. 669, 674 (E.D. Pa. 1990).

21. As the Trustee's electors – Gulf and CITGO – are both involved in litigation against the 2004 Respondents, the spirit, if not the letter, of the well-established caselaw prohibiting a 2004 examination when there is a pending adversary proceeding applies in this matter, thereby preventing the Trustee from conducting a 2004 examination of the 2004 Respondents.

22. The Trustee should thus be prevented from taking advantage of broad examination under Rule 2004, as any 2004 examination would likely operate to circumvent the safeguards of the discovery process as they relate to CITGO Texas Litigation and the Gulf Philadelphia litigation.

23. Accordingly, as a result of the adversarial proceedings commenced by CITGO and by Gulf – which was filed by counsel for the Trustee - against various 2004 Respondents of which the Trustee is seeking an examination, the Trustee's 2004 Motion for a 2004 Examination must be quashed.

B. **The Rule 2004 Examination is Limited to an Examination of Debtor's Affairs and is Not an Investigation of the 2004 Respondents' Business Affairs**

24. In good faith, and in a spirit of cooperation with the Trustee before any 2004 motion was filed, on October 1, 2009, representatives for the 2004 Respondents met with representatives for the Trustee in order to provide the Trustee with documentation from the 2004 Respondents that would aid in the Trustee's examination of the Debtor. In addition, representatives of the 2004 Respondents also voluntarily provided the Trustee with access to Daminder Singh Batra, an individual whose deposition is being sought by this 2004 Motion, for informal questioning.

5

25. More specifically, the 2004 Respondents have cooperated and voluntarily provided, the following documents and information to the Trustee:

   a. Universal Organizational Chart, providing relationship of all Universal Entities;

   b. Account Receivable Summaries for Universal Marketing, Inc.;

   c. Closing documents purchases of SPE's from Duncan Petroleum Corporation;

   d. Fuel Supply Agreements;

   e. Environmental Reports;

   f. Documents relating to Universal Marketing's and Willow Easton receivable;

   g. Corporate governance documents for Universal Marketing and the 2004 Respondents;

   h. Financial Statements for the 2004 Respondents;

   i. Tax Returns for Universal Marketing, Inc. from 2003-2007;

   j. Lease Agreements between the 2004 Respondents and various stations;

   k. Excise Tax Refunds;

   l. Statement of Debtor in Possession Account at Bancorp; and

   m. Current Accounts Receivable list for Universal Marketing and demand letter sent to account debtors.

26. In addition to providing the above documents, the 2004 Respondents have also requested documents and statements from various banks, including TD Bank, Bancorp Bank and WSFS, in order to provide such information to the Trustee.

27. Thus, the 2004 Respondents have cooperated with the Trustee in voluntarily providing various documents.

28. In addition, the 2004 Respondents have further cooperated and agreed to make Daminder Singh Batra, Jashveer Singh (who also submitted to a Rule 341 examination) and Gurmeet Batra available for 2004 Examinations on December 10, 2009, December 11, 2009 and January 12, 2010, respectively.

29. Despite the continued cooperation of the 2004 Respondents with the Trustee, the Trustee filed this Joint Motion seeking additional documentation related to the 2004 Respondents' business and dealings, much of which is unrelated to the Debtor's assets or activities.

30. Rule 2004 permits examinations that "relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Bankr. Rule 2004(a).

31. Although the 2004 Respondents recognize that a scope of a Rule 2004 examination is broad, it is not unlimited. "The examination of a witness as to matters having no relationship to the debtor's affairs or no effect on the administration of [the] estate is improper." In re: Cinderella Clothing Industries, Inc., 93 B.R. 373 (Bankr. E.D. Pa. 1988), *quoting* In Re: Continental Forge Co., 73 B.R. 1005, 1007 (Bankr. W.D. Pa. 1987).

32. Moreover, it is well settled that "[t]he purpose generally of Rule 2004 is to enable parties in interest to locate assets of the debtor and to make those assets available for the creditors of the estate. While the purpose is broad, Rule 2004 is not without limits. the examination or a witness as to matters having no relationship to the debtor's affairs or no effect on the administration of his estate is improper. In Re: Continental Forge Co., 73 B.R. 1005, 1007 (Bankr. W.D. Pa. 1987), *citing* Matter of Wilcher, 56 B.R. 428 (Bankr. N.D. Ill. 1985), In re Johns-Manville Corp., 42 B.R. 362 (S.D.N.Y. 1984).

33. In fact, bankruptcy courts have recognized that "while Rule 2004 allows a fishing expedition to some extent, it may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." In re Country wide Home Loans, Inc., 348 B.R. 373, (W.D. Pa. 2008), *citing* Matter of Wilcher, 56 B.R. 428 (Bankr. N.D. Ill. 1985).

34. Thus, the 2004 Examinations must be limited to the Debtor's affairs, and the 2004 Respondents respectfully request that any questions regarding the legal matter in India (as discussed in the CITGO motion that the Trustee has joined), which does not involve the Debtor, or the debtors affairs as they relate to the 2004 Respondents, be prohibited.

7

35.     In addition, the Trustee's document requests go far beyond what is permitted by a Rule 2004 Examination and clearly seek documents related solely to the 2004 Respondents' private business affairs.

36.     More specifically, the Trustee is requesting the following documents which do not relate to the Debtor's affairs or the administration of the Debtor's estate:

   a. Documents relating to inter-company loans between or among the 2004 Respondents;

   b. Any and all management contracts, agreements or memoranda of understanding between or among the 2004 Respondents;

   c. Any and all fuel supply contracts, agreements or memoranda of understanding between or among the 2004 Respondents;

   d. Any and all fuel supply contracts, agreements, or memoranda or understanding between any of the 2004 Respondents and any of their suppliers;

   e. Any and all corporate governance documents for each of the 2004 Respondents, including, without limitation, articles of incorporation, charters, by-laws and corporate minutes;

   f. All documents related to any loan, credit facility or financing arrangement, to which any of the 2004 Respondents were a party with any financial institution, including, without limitation (i) TD; (ii) Wilmington Savings Fund Society; and (iii)The Bancorp Bank, including, without limitation, loan agreements, security agreements, borrowing base certificates (with supporting calculations), collateralization documents, credit applications, cancelled checks, wire transmittal slips, remittances, and other supporting financial documents reflecting all advance and payment activity during the Applicable Time Period (defined as January 1, 2005 to present).

   g. Any demand for payment, notice of default or delinquency, enforcement of right to payment, or other communication, from any bank, depository, or financial institution, regarding any loans or requests for payment from any of the 2004 Respondents during the Applicable Time Period.

   h. All Financial Statements, whether audited or unaudited for any of the 2004 Respondents covering, prepared during or relied upon by the 2004 Respondents during the Applicable Time Period.

   i. All documents related to ownership of any assets of the 2004 Respondents, including, but not limited to, deeds, mortgages, deeds of trust, lease

    agreements, bills of sale and records of the 2004 Respondents evidencing ownership of such assets.

j.   All valuations, appraisals, broker price opinions, or liquidation analyses, including all drafts, of any assets of the 2004 Respondents, including, without limitation, all real property owned, leased, licensed, or operated by the 2004 Respondents.

k.   All documents, including, but not limited to, electronic records, relating to financial accounting for the 2004 Respondents, including, but not limited to, profit and loss statements, balance sheets, general ledgers, daily accounting reports, and daily trial balances.

l.   All corporate tax returns (with schedules) for calendar years 2005 forward for each of the 2004 Respondents.

m.   All documents relating to the 2004 Respondents' current accounts receivable aging.

n.   All documents relating to any claim the Debtor has asserted, or could assert, against any of the 2004 Respondents.

o.   All documents relating to any claim that any of the 2004 Respondents has asserted, or could assert, against the Debtor.

p.   All documents relating to any excise tax refund due and owing to the Debtor or any 2004 Respondent during the Applicable Time Period.

q.   All documents relating to any trust established by any 2004 Respondent, including, without limitation, the Entity Shareholders, or any principal, owner, or key employee thereof, during the Applicable Time Period.

r.   Any and all communications between the 2004 Respondents and TD during the Applicable Time Period.

s.   Any and all communications between the 2004 Respondents and Wilmington Savings Fund Society during the Applicable Time Period.

t.   Any and all communications between the 2004 Respondents and The Bancorp Bank during the Applicable Time Period.

37.   Many of the Trustee's above-listed document requests, including, but not limited to, inquiries regarding corporate structure, contracts involving only the 2004 Respondents, leases and assets

of the 2004 Respondents relate exclusively to the 2004 Respondents' business affairs. Accordingly, the Trustees requests for such documents are beyond the scope of an examination permitted under Rule 2004.

38. Accordingly, the 2004 Respondents respectfully request that the Court enter an order quashing the Trustee's document requests attached as Exhibit "B" to the Trustee's Joint Motion which relate exclusively to the 2004 Respondents' business affairs, and have no relation to the Debtor's assets.

39. In addition to requesting the documents, the Trustee further requests this Court to enter an order compelling the 2004 Respondents to produce the large volume of documents on or before November 27, 2009. Such request is also well beyond the scope of Rule 2004 and is unduly burdensome to the 2004 Respondents.

40. There is nothing in Rule 2004 which "authorizes a party to require production of documents unless such production is in connection with and *at the same time* as the examination of the subject entity." In re Sunridge Associates, 202 B.R. 761 (E.D. Cal. 1996) (emphasis added).

41. Additionally, as there is a lack of a procedural framework for Rule 2004 examinations and proceedings, courts have noted that Rule 2004 proceedings may "borrow" from applicable procedures as set forth in the Federal Rules of Civil Procedure. See In re: Valley Forge Plaza Associates, 109 B.R. 669, 675 (E.D. Pa. 1990), *citing* Analytical Systems, Inc., 71 B.R. 408, 411-13 (N.D. Ga. 1987) ("The history of Bankruptcy Rule 2004 . . . indicate[s] that the Federal Rules relating to discovery and deposition practice apply to Rule 2004 Examinations").

42. Thus, in applying the procedural discovery and deposition practice rules to this matter, the 2004 Respondents cannot be compelled to produce documents in less than 30 days after the request has been made. See Fed.R.C.P 34(b)(2)(A) (providing 30 days for a party to respond to requests to produce documents).

10

43. The Trustee has not cited to a single rule or authority that requires the 2004 Respondents to produce documents in less than 30 days from when the request for production was made.

44. Thus, the 2004 Respondents do not have any obligation to produce documents responsive to the Trustee's request before the agreed-upon dates when the 2004 examinations of the 2004 Respondents are scheduled to take place, *i.e.* December 10, 2009, December 11, 2009 and January 12, 2010.

45. Accordingly, the 2004 Respondents respectfully request that to the extent that the Court finds the Trustees' document requests to be within the scope of permitted discovery pursuant to Rule 2004, that such permitted production will take place at the time of the examination of the 2004 Respondents.

WHEREFORE, the 2004 Respondents respectfully request this Court to Enter an Order: (1) **QUASHING** the Rule 2004 Examination, or in the alternative, (2) **QUASHING** the Trustee's Document Requests attached as Exhibit "B" to the Trustee's 2004 Motion which are outside the scope of Rule 2004; (3) providing that any 2004 Examination is limited to matters involving the Debtor's estate; and (4) providing that production of documents will be limited to matters related to administration of the Debtor's estate and occur at time of the examination of the 2004 Respondents.

Respectfully submitted,

Dated:  November 19, 2009             /s/ Alan S. Fellheimer
Alan S. Fellheimer, Esquire
Pennsylvania Attorney Identification No. 09842
**FELLHEIMER & EICHEN LLP**
1800 John F. Kennedy Blvd.
Suite 1400
Philadelphia, PA 19103
(215) 253-6630